UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

-FILED-

APR 23 2025

At_____M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MICHELLE CONNER, on behalf of herself and all others similarly situated, | CASE NO. |
| Plaintiff, | JUDGE |
| vs. | 1:25CV196 |
| CV EAST, LLC<br>c/o Statutory Agent Northwest Registered Agent LLC<br>5534 Saint Joe Road<br>Fort Wayne, IN 46835 | **PLAINTIFF'S COMPLAINT**<br><br>(Jury Demand Endorsed Herein) |
| and | |
| CAFÉ VALLEY, INC.<br>c/o Statutory Agent Capitol Corporate Services, Inc.<br>8825 N 23rd Ave, Ste 100<br>Phoenix, AZ 85021 | |
| Defendants. | |

Now comes Plaintiff Michelle Conner ("Plaintiff"), by and through undersigned counsel, and for her Complaint against CV East, LLC and Café Valley, Inc. ("Defendants") states and alleges the following:

### INTRODUCTION

1. Plaintiff institutes this "collective action" as a result of Defendants' practices and policies of not paying its non-exempt employees, including Plaintiffs and other similarly situated employees, for all hours worked, including overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business throughout this District and Division, maintain a physical location, and because some of the events and omissions giving rise to the claims occurred in this District and Division.

## PARTIES

4. At all times relevant herein, Plaintiff was a resident of Grant County, Indiana.

5. At all times relevant herein, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

6. At all times relevant herein, Defendant CV East, LLC was a domestic limited liability company, organized and existing under the laws of the State of Indiana.

7. At all times relevant herein, Defendant Café Valley, Inc. is a for-profit corporation, organized and existing under the laws of the State of Delaware.

8. Defendants operate baking facilities at 3701 South Adams Street, Marion, Indiana 46953 and 7000 West Buckeye Road, Phoenix, Arizona 85043.

9. At all times relevant herein, Defendants CV East, LLC and Café Valley, Inc. have operated as a single "enterprise" within the meaning of 29 U.S.C. § 203(r)(1). Defendants performed related activities through unified operation and common control for a common business purpose, and part of their unified business model is the wage violations alleged in this Complaint.

10. At all times relevant herein, Defendants were employers within the meaning of 29 U.S.C. § 203(d).

11. At times relevant herein, Defendants were an enterprise within the meaning of 29

U.S.C. § 203(r).

12. At all times relevant herein, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1) and has enjoyed yearly gross revenue in excess of $500,000.

13. At all times relevant herein, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

14. Upon information and belief, Defendants share equipment, ownership, management, and collectively assert control over their employees.

15. Defendants perform related activities through unified operations and control for a common business purpose, and they share common labor practices and policies, including the practices and policies complained of herein.

16. Plaintiff's written consent to this action is attached as Exhibit 1.

17. Written consents to join this action as to Count One, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

18. Defendants, manufacturers of baked goods and related food products, operates two production plants in the United States, including Marion, Indiana and Phoenix, Arizona.

19. From approximately January 2022 to February 2024, Defendants employed Plaintiff in croissant production.

20. At all material times, Defendants employed similarly situated production employees at each of its production plants, including but not limited to: maintenance technicians, production, croissants packing, croissants production (hereinafter "production employees").

21. Plaintiff and other similarly situated production employees had the same and/or substantially similar job duties and/or responsibilities and were subjected to the same policies and procedures.

22. Defendants classified Plaintiff and other similarly situated production employees as non-exempt employees.

23. Defendants paid Plaintiff and other similarly situated production employees an hourly wage.

24. Plaintiff and other similarly situated production employees were regularly scheduled to work 40 or more hours per week.

25. Plaintiff and other similarly situated production employees regularly worked more than 40 hours per week.

26. Plaintiff estimates that she worked on average approximately 27 to 40 hours or more per week during her employment.

### Failure to Pay for All Hours Worked

27. Plaintiff and other similarly situated production employees were only paid for work performed between their scheduled start and stop times, regardless of when they clocked out, and were not paid for work performed before and after their scheduled start and stop times, including: (a) changing into and out of personal protective equipment, including a uniform jacket, gloves, a hairnet/beard net, shoe guards/shoes, and/or safety glasses; (b) washing their hands; and/or (c) walking to and from their assigned area of the production floor and performing a pass down.

28. The pre-shift work, including changing into personal protective equipment, washing hands, and/or walking to and from their assigned area of the production floor and performing a pass down, took upwards of 10 minutes or more. In order to start work on time,

Plaintiff and other similarly situated employees had to arrive at least 10 minutes early to start this pre-shift work.

29. Similarly, the post-shift work, walking from the production floor and changing out of their personal protective equipment took upwards of 5 minutes or more.

30. Defendants knew that Plaintiff and other similarly situated production employees performed this pre-shift and post-shift work because it required them to perform it and supervisors observed them performing it.

### Failure to Pay for Donning Time

31. Before Plaintiff and other similarly situated production employees began their shifts, they donned personal protective equipment, including a uniform jacket, gloves, hair net/beard net, shoe guards/shoes, and safety glasses.

32. Wearing personal protective equipment was necessary because Plaintiff and other similarly situated production employees could not safely perform their work without it. It protected Plaintiff and other similarly situated production employees from various injuries, including head, hand, foot, eye, ear, and other bodily injuries.

33. Additionally, Defendants required Plaintiff and other similarly situated production employees to wear the personal protective equipment, required them to put it on and take it off at work so that it was maintained in a safe, sanitary, and reliable condition.

34. Defendants did not permit Plaintiff and other similarly situated employees to take their shoes or uniform jackets home.

35. The time Plaintiff and other similarly situated production employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendants, the Occupational Safety and Health Administration

("OSHA"), and various regulations concerning sanitation, including those promulgated by the United States Department of Agriculture ("USDA"), and was performed for Defendants' benefit in that it helped keep the plant floors safe and sanitary, and helped promote a more safe and efficient production process.

36. Donning personal protective equipment was an intrinsic element of Plaintiff and other similarly situated production employees' job duties.

37. Plaintiff and other similarly situated production employees could not dispense with donning personal protective equipment.

38. Plaintiff and other similarly situated production employees were not paid for time spent donning their personal protective equipment.

### Failure to Pay for Washing Hands

39. Prior to donning and after donning their personal protective equipment, Plaintiff and other similarly situated production employees were required to walk to the sink to wash their hands.

40. Hand washing was certainly integral and indispensable to Plaintiff and other similarly situated production employees' principal activities of manufacturing food products for human consumption.

41. Hand washing was required by Defendants, the Occupational Safety and Health Administration ("OSHA"), and various regulations concerning sanitation, including those promulgated by the USDA, and was performed for Defendants' benefit in that it helped promote a more safe and sanitary production process.

42. Washing hands was an intrinsic element of Plaintiff and other similarly situated production employees' job duties.

43. Plaintiff and other similarly situated production employees could not dispense with washing their hands if they were to perform their job.

44. Plaintiff and other similarly situated production employees were not paid for time spent walking to the sink and washing their hands.

### Failure to Pay for Post-Donning Walk Time

45. After donning their personal protective equipment, washing their hands, and Plaintiff and other similarly situated production employees walked from the area where they changed into their personal protective equipment to their assigned area of the production floor. Such time constitutes "post-donning walk time" and is compensable under the continuous work-day rule.

46. Plaintiff and other similarly situated production employees were not paid for their post-donning walk time.

### Failure to Pay for Pre-doffing Walk Time

47. After their shifts ended, Plaintiff and other similarly situated production employees walked from the production floor to the area in which they changed out of their personal protective equipment. Such time constitutes "pre-doffing walk time" and is compensable under the continuous work-day rule.

48. Plaintiff and other similarly situated production employees were not paid for their pre-doffing walk time.

### Failure to Pay for Doffing Time

49. After their shifts ended, Plaintiff and other similarly situated production employees doffed their personal protective equipment.

50. The time Plaintiff and other similarly situated production employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendants, the Occupational Safety and Health Administration ("OSHA"), and various regulations concerning sanitation, including those promulgated by the United States Department of Agriculture ("USDA"), and was performed for Defendants' benefit in that it helped keep the plant floors safe and sanitary, and helped promote a more safe and efficient production process.

51. Doffing personal protective equipment was an intrinsic element of Plaintiff and other similarly situated production employees' job duties.

52. Plaintiff and other similarly situated production employees could not dispense doffing their personal protective equipment if they are to perform their production work.

53. Plaintiff and other similarly situated production employees were not paid for time spent doffing their personal protective equipment.

**Failure to Pay Overtime Compensation**

54. As a result of Plaintiff and other similarly situated production employees not being paid for all hours worked, Plaintiff and other similarly situated production employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

55. The time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above was in addition to the 40 or more hours they regularly worked between their scheduled start and stop times each workweek, and thus, constituted overtime hours worked, for which they were/are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay.

## Defendants Willfully Violated the FLSA

56. Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA.

57. Defendants knew that, and otherwise showed reckless disregard as to whether its conduct was prohibited by the FLSA.

58. Defendants had/have a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid worked referenced above and not compensating them for time spent performing such work.

59. Defendants knew that Plaintiff and other similarly situated employees were performing the unpaid work because Defendant required them to perform it and supervisors observed them performing it.

60. Defendants, who determined the work schedules of Plaintiff and other similarly situated employees, also knew that the time Plaintiff and other similarly situated employees spent performing such unpaid work was in addition to the 40 hours or more that Defendants scheduled them to work, and thus, knew that Plaintiff and other similarly situated employees should have been paid overtime compensation for such unpaid work.

61. Defendants knew that, and otherwise showed reckless disregard as to whether its conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the FLSA.

62. Defendants knew or should have known that its policies and practices violate the law, and Defendants did not make and has not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law has carried out its unlawful pattern, practice, and policy of not paying its Plaintiff other similarly situated

production employees for all hours worked. Defendants' method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that its conduct complied with the law.

63. Upon information and belief, Defendants failed to make, keep, and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated production employees employed by Defendants.

## COLLECTIVE ACTION ALLEGATIONS

64. Plaintiff brings Count One of this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct.

65. The group of individuals Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of this collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> All current and former non-exempt production employees of Defendants who worked at the Marion, Indiana and/or Phoenix, Arizona facilities any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter.

66. Plaintiff is unable, at this time, to state the exact size of the FLSA Class, but upon information and belief, avers that it consists of more than 100 persons.

67. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Plaintiff, numerous current and former production employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

68. The similarly situated production employees are known to Defendants and are readily identifiable through its payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

69. Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a formula applicable to the putative class as a whole.

## COUNT ONE
### Violations of Fair Labor Standards Act

70. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

71. Defendants' practice and policy of not paying Plaintiff and other similarly situated production employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

72. Defendants intentionally failed to pay Plaintiff and other similarly situated employees' required overtime compensation for hours worked in excess of 40 per workweek.

73. Defendants' conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

74. Defendants' actions and/or omissions were not in good faith.

75. By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

76. As a result of Defendants' practices and policies, Plaintiff and other similarly situated production employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action pursuant to the FLSA;

B. Order prompt notice to all FLSA Class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

C. Award Plaintiff and the class she represents actual damages for unpaid wages;

D. Award Plaintiff and the class she represents statutory liquidated damages in an amount to the unpaid wages found due to Plaintiff and the classes she represents. under the FLSA;

E. Award Plaintiff and the class she represents pre- and post-judgment interest at the statutory rate;

F. Award Plaintiff and the class she represents attorneys' fees, costs, and disbursements; and

G. Award Plaintiff and the class she represents further and additional relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Matthew S. Grimsley*

Matthew S. Grimsley (OH 0092942)
(seeking admission *pro hac vice*)
Anthony J. Lazzaro (OH 0077962)
(will file for admission *pro hac vice*)
Lori M. Griffin (OH 0085241)
(will file for admission *pro hac vice*)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
lori@lazzarolawfirm.com
anthony@lazzarolawfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

*/s/ Matthew S. Grimsley*

Matthew S. Grimsley (OH 0092942)

*Attorney for Plaintiff*

13